UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EQUAL VOTE AMERICA CORP., and LEWIS Y. LIU,

       Plaintiffs,

-v.-

NANCY PELOSI, *in her official capacity as Speaker of the House of Representatives*; KEVIN McCARTHY, *in his official capacity as the House Minority Leader*; MITCH McCONNELL, *in his official capacity as the Senate Majority Leader*; CHARLES SCHUMER, *in his official capacity as the Senate Minority Leader*; and DONALD J. TRUMP, *in his official capacity as President of the United States*,

       Defendants.

19 Civ. 777 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

  On December 22, 2018, the United States Government (the "Government") entered into the longest shutdown in the country's history (the "Shutdown"). The Shutdown lasted 35 days and affected a large swath of the Government, including, *inter alia*, the Federal Emergency Management Agency ("FEMA"), the Food and Drug Administration ("FDA"), the Federal Bureau of Investigation ("FBI"), and the National Park Service ("NPS"). On January 25, 2019 — coincidentally, the day the Shutdown ended — Plaintiffs filed this action in the Southern District of New York, challenging the constitutionality of the Shutdown. Plaintiffs alleged that Defendants, in their capacities as heads of the Legislative and Executive Branches, had disregarded the founding fathers' intentions in allowing the Government to shut down, and in so doing

had violated, *inter alia*, Articles I, II, and VI of the Constitution and the Tenth Amendment. Defendants now move to dismiss Plaintiffs' Complaint for lack of standing, mootness, and failure to state a claim for relief. For the reasons set forth in the remainder of this Opinion, Defendants' motion to dismiss is granted.

## BACKGROUND

**A. Factual Background**[1]

Plaintiff Equal Vote America Corp. is a non-profit corporation "with the mission of educating the general public on voting rights, and promoting voter participation in the election process without supporting any particular political party or candidate." (Compl. 1). Plaintiff Lewis Y. Liu is a registered voter in the State of New York. (*Id.*). Defendants are the senior-most members of the United States Congress, and the President of the United States.

As of January 25, 2019 — the day this action was filed — the Shutdown had lasted 35 days. (Compl. 2). Plaintiffs noted that numerous branches of the Government were affected by the Shutdown: the Environmental Protection Agency ("EPA") ran out of funds and furloughed 95% of its employees (*id.* at 7); the Smithsonian Museums and National Zoo closed their doors (*id.*); and the Department of Housing and Urban Development ("HUD") sent letters to

---

[1] The Court draws the facts for this Opinion primarily from Plaintiffs' Complaint ("Compl." (Dkt. #1)), which is the operative pleading in this action. Given Plaintiffs' decision to utilize both numbered pages and numbered paragraphs in their Complaint, the Court has cited to the relevant page in order to avoid confusion.

landlords, asking them not to evict residents in housing assistance programs for which funding had lapsed (*id.*), among other things.

Plaintiff Liu alleged that he was affected by the Shutdown in many ways. (Compl. 13-14). By example, Plaintiff's harms included: (i) breach of the "social contract" by the shutting down of the Government; (ii) fear for his safety when taking the subway in New York City because of the lack of funding to the FBI; (iii) fear for his food's safety because of the lack of funding to the FDA; (iv) fear of potential air pollution and water contamination because of the lack of funding to the EPA; and (v) the payment of extra costs as a New Yorker because of Governor Andrew Cuomo's commitment to pay for the continuing operation of the Statue of Liberty and Ellis Island during the Shutdown. (*Id.*).

**B.   Procedural Background**

Plaintiffs initiated this action with the filing of their Complaint on January 25, 2019. (Dkt. #1). As already mentioned, Plaintiffs allege in their Complaint that the Shutdown was unconstitutional and sought, as relief, an injunction ordering the Government to resume operations under the Consolidated Appropriations Act of 2018, Pub. L. 115-141, 132 Stat. 348 (2018). (Compl. 16). Plaintiffs also sought a declaratory judgment finding that Defendants lacked the power under the Constitution to shut down the Government; that any existing appropriations law must remain in force until a new appropriations law is enacted; and that Defendants should "officially apologize to the People, who [are] the Sovereignty of this Republic." (*Id.*).

On February 20, 2019, the Court issued an Order to Show Cause as to why the case should not be dismissed as moot, given the end of the Shutdown the prior month. (Dkt. #4). On March 6, 2019, and again on April 5, 2019, Plaintiffs filed responses to the Court's Order to Show Cause. (Dkt. #5-6). On April 29, 2019, the Court issued a second Order to Show Cause, this time directing Plaintiffs to offer good cause as to why they had failed to serve process on Defendants within the required 90-day period. (Dkt. #8). Plaintiffs responded on May 1, 2019 (Dkt. #9, 11), and on May 7, 2019, the Court found that Plaintiffs both had offered good cause for their failure to serve process and had identified reasons why the case should not immediately be dismissed as moot (Dkt. #13).

On May 13, 2019, the Court scheduled an initial pretrial conference for August 26, 2019. (Dkt. #14). On August 14, 2019, Defendants filed a letter motion with the Court requesting leave to file a motion to dismiss. (Dkt. #22). In response, the Court converted the scheduled initial pretrial conference to a pre-motion conference. (Dkt. #23). Plaintiffs responded to Defendants' letter motion on August 18, 2019. (Dkt. #25). The parties appeared before the Court for the scheduled pre-motion conference on August 26, 2019, at which time the Court set a briefing schedule for Defendants' motion to dismiss. (Minute Entry for August 26, 2019).

Defendants filed their motion to dismiss, along with a supporting memorandum, on September 30, 2019. (Dkt. #28-29). Plaintiffs filed an opposing memorandum and declaration on November 1, 2019. (Dkt. #30-31).

On November 15, 2019, Defendants filed a letter with the Court expressing their intention to rest on their opening submission and not file any papers in reply. (Dkt. #32).

## DISCUSSION

**A. The Court Dismisses the Action for Lack of Standing**

**1. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)**

Defendants challenge Plaintiffs' request for an injunction and a declaratory judgment on the dual grounds of mootness and lack of standing, both of which are analyzed under the rubric of Federal Rule of Civil Procedure 12(b)(1). *See Platinum-Montaur Life Scis. LLC* v. *Navidea Biopharmaceuticals, Inc.*, No. 17 Civ. 9591 (VEC), 2018 WL 5650006, at *2 (S.D.N.Y. Oct. 31, 2018) (citing *All. For Envtl. Renewal, Inc.* v. *Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006)), *vacated and remanded on other grounds*, 943 F.3d 613 (2d Cir. 2019).

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter* v. *HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also*

5

*Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Id.* "In opposition to such a motion, [plaintiffs] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

## 2. Plaintiffs Lack Standing to Bring This Action

Federal courts are courts of limited jurisdiction, "and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Platinum-Montaur Life Scis. LLC*, 943 F.3d at 616. Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" thereby "restrict[ing] the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted) (quoting *Valley Forge Christian College* v. *Americans for Separation of Church and State, Inc.*, 454 U.S. 471 (1982)). The "Case" and "Controversy" requirement places the burden on "those who invoke the power of a federal court to demonstrate standing — a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013). Courts are to be mindful that the "standing inquiry has been especially rigorous when reaching the merits of a dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Am. Civ. Liberties Union* v. *Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quoting *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

In order to satisfy the first prong of standing — that the plaintiff has suffered an "injury in fact" — the plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.* v.

7

*Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  For an injury to be "concrete and particularized," a plaintiff must "show that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  *Valley Forge*, 454 U.S. at 472 (emphasis added) (quoting *Gladstone Realtors* v. *Vill. of Bellwood*, 441 U.S. 91, 99 (1979)).  Thus,

> [A] plaintiff raising only a generally available grievance about government — claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large — does not state an Article III case or controversy.

*Lujan*, 504 U.S. at 573-74; *accord Bender* v. *Obama*, 653 F. App'x 31, 32 (2d Cir. 2016) (summary order).  Indeed, the Supreme Court has explained that "Article III standing 'is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'"  *Hollingsworth* v. *Perry*, 570 U.S. 693, 707 (2013) (quoting *Diamond* v. *Charles*, 476 U.S. 54, 62 (1986)).  Finally, the Court must also consider prudential concerns, not derived from Article III, that include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).

Much as sister courts and the Second Circuit have found in other lawsuits brought by Plaintiffs, the Court here finds that Plaintiffs have failed to establish that they have suffered a concrete, particularized injury. *See Liu* v. *Ryan*, 724 F. App'x 92, 93 (2d Cir. 2018) (summary order); *Equal Vote Am. Corp.* v. *Cong.*, 397 F. Supp. 3d 503, 508-09 (S.D.N.Y. 2019).[2] As previously mentioned, Plaintiff Liu claims that he has standing here due to the various concerns he has for his safety — all of which stem from funding shortfalls to various federal agencies — as well as a supposed "double-charge" he has incurred as a result of Governor Cuomo's commitment to pay for the continuing operation of the Statue of Liberty and Ellis Island. (Compl. ¶¶ 13-14).

However, it is clear that all of the concerns Liu has raised are concerns that similarly affected the rest of the American public during the course of the Shutdown. *See Person* v. *United States*, No. 19 Civ. 154 (LGS), 2019 WL 258095, at *2 (S.D.N.Y. Jan. 18, 2019) (finding that plaintiff had failed to establish an injury in fact where he claimed that "the Government shutdown is causing injury to the economy, thereby causing injury to U.S. citizens,

---

[2] The Court focuses its standing analysis on Plaintiff Liu, as Plaintiffs have failed to plead any facts demonstrating that Equal Vote America Corp. has suffered an injury in fact from the Shutdown. *See Equal Vote Am. Corp.* v. *Cong.*, 397 F. Supp. 3d 503, 508 (S.D.N.Y. 2019) ("To sue on its own behalf, EVA must 'meet the same standing test that applies to individuals.'" (quoting *N.Y. Civ. Liberties Union* v. *N.Y. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012))). And insofar as Equal Vote America Corp. relies on "associational standing," Plaintiff Liu remains the relevant focus of the analysis. *See id.* at 509 ("[I]n order to bring claims on behalf of its members under the 'associational standing' doctrine, an organizational plaintiff such as EVA must identify, by name, at least one member with standing." (citing *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 498-99 (2009))).

9

including Plaintiff"). Plaintiff's claims become no less generalized by limiting those who share his grievance to fellow New Yorkers, as opposed to all Americans. *See Fischer* v. *Cruz*, No. 16 Civ. 1224 (JS) (ARL), 2016 WL 1383493, at *2 (E.D.N.Y. Apr. 7, 2016) (finding that plaintiff failed to plead injury in fact where he "share[d] []his alleged injury with every other voter in the State of New York"). And insofar as Plaintiff tries to couch his generalized grievances in terms that attempt to make the harm seem more specific (*see* Compl. 13 (alleging that, due to the lapse in funding to the FBI, "Plaintiff has a reason to be concerned for his safety when taking the subway in New York City … because NYC is always the prime target for terrorist attack")), Plaintiff has still failed to allege an injury that is "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548; *cf. Person*, 2019 WL 258095, at *2 (finding that plaintiff, who argued that he was being threatened with a loss of business and income due to a shutdown of the federal courts, had failed to demonstrate "a substantial risk that the federal judiciary will be affected in a way that causes him injury").

Therefore, it is clear that Plaintiffs have not and cannot assert that they suffered any injury in fact as a result of the Shutdown, and thus lack standing to bring this action. And since Plaintiffs lack standing, the Court does not have subject matter jurisdiction to adjudicate this action any further. *See Lowell* v.

*Lyft, Inc.*, 352 F. Supp. 3d 248, 253 (S.D.N.Y. 2018).[3] Defendants' motion to dismiss is therefore granted.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: March 26, 2020
        New York, New York

                                     KATHERINE POLK FAILLA
                                     United States District Judge

---

[3] The Court also need not address Defendants' mootness arguments, for which Defendants would have borne the burden of proof. *See Mhany Management, Inc.* v. *Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).